# EARLY, WARDEN, ET AL. *v.* PACKER

No. 01–1765.   Decided November 4, 2002

PER CURIAM.

The United States Court of Appeals for the Ninth Circuit granted habeas relief to respondent William Packer after concluding that the state trial judge coerced the jury's verdict. *Packer* v. *Hill*, 291 F. 3d 569 (2002). Because this decision exceeds the limits imposed on federal habeas review by 28 U. S. C. § 2254(d), we grant the petition for certiorari and reverse.

I

A California jury convicted respondent of one count of second-degree murder, one count of attempted murder, two counts of attempted robbery, two counts of assault with a deadly weapon, and one count of assault with a firearm. It acquitted him on 10 other counts.

The path to the jury's guilty verdicts on the murder and attempted-murder charges was not an easy one. After 28 hours of deliberation, and after the jury had returned sealed verdict forms on all the other charges, juror Eve Radcliff sent a note to the judge requesting to be dismissed from the jury due to "'health problems.'" 291 F. 3d, at 573. The judge then met alone with Radcliff, who explained that "'because of the seriousness of the charges, I can't make snap decisions. . . . I was beginning to feel a little burned out.'" *Ibid.* The judge asked Radcliff if she could "'hold out just a little bit longer,'" and when Radcliff agreed the judge replied: "'I really appreciate it. Otherwise, they have to start deliberations all over again with another person.'" *Ibid.* (emphasis deleted).

The next day, the foreman sent the judge a note stating that "'we can no longer deliberate,'" that "'Eve Radcliff, does not appear to be able to understand the rules as given by you,'" that "'nearly all my fellow jurors questio[n] her ability to understand the rules and her ability to reason,'" and that continuing will result in a "'hung jury . . . based on . . . one person's inability to reason or desire to be unreasonable.'" *Ibid.* The judge called the jury into the court-

room, and, in the presence of the attorneys and the defendant, read the note aloud. The judge asked the foreman whether the jury was deliberating. The foreman replied that the jurors were "'just having the same conversation over the same issue time and time again.'" *Id.*, at 574. The judge made the following statement to the jury:

> "'The juror has a right to do that, as you all know. They have a right to disagree with everybody else. But they do not have a right to not deliberate. They must deliberate and follow the rules and laws as I state it to them.'" *Ibid.*

The judge then asked the foreman what the latest vote count was, but told him not to reveal which side had which number of votes. The foreman indicated that the last vote count had been 11 to 1. After the foreman indicated that further deliberations would be helpful, the judge gave the following instruction to the jury:

> "'What you do is—like I think what the instructions were—you apply the facts to the law and you arrive at a decision. The law is right there, and I think elements of the law was *[sic]* given to you in those instructions. They do this or not do this? Was it proven beyond a reasonable doubt? This element, this element, this element? If they did and you find unanimously they did that, you must follow the law and find them either guilty or not guilty of that charge.'" *Ibid.* (emphasis deleted).

At this point, defense counsel objected on the ground that the judge was improperly "'instructing the jury . . . as to their manner of deliberation.'" *Id.*, at 574–575. The judge overruled the objection and continued his instruction as follows:

> "'Ladies and Gentlemen, the only thing I'm going to tell you right now is; once again, I told you, you'll look up in the instructions paraphrasing it, I think I'm using

the correct words: you're the sole judges of the facts. You determine the facts. You then apply the law to those facts as I state it to you, and you must accept and follow the law. You can't make up your own law. You must accept and follow the law as I state it to you.'" *Id.*, at 575.

The judge then excused the jury for the day.

After a day off, deliberations resumed on a Friday. Once again, Radcliff sent the judge a note asking to be dismissed from the jury. This time she complained about "'feeling[s] of distrust and disrespect from the other jurors,'" and said that "'I have reached a point of anger, and I don't believe I can be objective.'" *Ibid.* The judge again met with Radcliff in his chambers, outside the presence of attorneys, and asked her if she was continuing to deliberate. Radcliff responded that she was "trying," but not to the satisfaction of the others. *Id.*, at 576. The judge thanked her and returned her to the jury room. Then the judge met briefly with the foreman, who assured him that Radcliff was indeed continuing to deliberate. The jury then resumed its deliberations. The following Tuesday, the jury returned a guilty verdict on the attempted-murder count, and the next morning a guilty verdict on the second-degree murder charge.

Respondent appealed his conviction to the Court of Appeal for the State of California, Second Appellate District, arguing that the comments to Radcliff and to the jury were coercive and denied him his due process right to a fair and impartial jury. California law, unlike federal law, prohibits the giving of a so-called *Allen* v. *United States*, 164 U. S. 492 (1896), charge to a deadlocked jury—that is, a charge that specifically urges the minority jurors to give weight to the majority's views. *People* v. *Gainer*, 19 Cal. 3d 835, 852, 566 P. 2d 997, 1006 (1977), held that no instruction may be given which either "(1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming

or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried."

The state appellate court, applying *Gainer*, rejected respondent's claim. "[T]here is nothing improper," it said, "in urging the jury to consider the matter further with the view to reaching an agreement[,] as long as the language used does not coerce a particular type of verdict. Accordingly, the comments made and not made by the court to the jury did not coerce a particular verdict or deny Packer any constitutional rights." App. to Pet. for Cert. H–15 to H–16 (citations omitted). The court rejected respondent's remaining challenges to his conviction, and the State Supreme Court declined review.

Respondent sought a writ of habeas corpus from the United States District Court for the Central District of California. That court dismissed the petition, but granted a certificate of appealability on the question whether the state trial judge violated respondent's Fourteenth Amendment rights by coercing the jury into rendering a verdict on the attempted-murder and second-degree murder counts. The Court of Appeals for the Ninth Circuit reversed on that ground, and instructed the District Court to grant the writ on the murder convictions. California's Attorney General has petitioned for certiorari.

## II

When a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, 28 U. S. C. § 2254(d) forecloses relief unless the state court's adjudication of the claim:

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

"(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The jury-coercion claim in respondent's habeas petition is the same claim rejected on the merits in his direct appeal to the state appellate court, and the Ninth Circuit correctly recognized that § 2254(d) was therefore applicable. It held that respondent had established that the decision of the Court of Appeal was contrary to established federal law for two, and possibly three, reasons. We think none of them correct.

First, the Ninth Circuit observed that the state court "failed to cite . . . any federal law, much less the controlling Supreme Court precedents." 291 F. 3d, at 578. If this meant to suggest that such citation was required, it was in error. A state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams* v. *Taylor*, 529 U. S. 362, 405–406 (2000). Avoiding these pitfalls does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them. The Ninth Circuit's disapproval of the Court of Appeal's failure to cite this Court's cases is especially puzzling since the state court cited instead decisions from the California Supreme Court that impose even *greater* restrictions for the avoidance of potentially coercive jury instructions. Compare *People* v. *Gainer, supra,* at 852, 566 P. 2d, at 1006, with *Allen* v. *United States, supra,* at 501.

Second, the Ninth Circuit charged that the Court of Appeal "failed to apply the totality of the circumstances test as required. by *Lowenfield* [v. *Phelps,* 484 U. S. 231 (1988)]." That was so, the Ninth Circuit concluded, because it "simply mentioned three particular incidents in its analysis," "failed

to consider" other "critical facts," and "failed to consider the cumulative impact" of all the significant facts, one of which it "[did] not even mention in its analysis." 291 F. 3d, at 578–579, and n. 10. With regard to the last point: The significant fact the Ninth Circuit said was not mentioned—that the judge sent the jury back to its deliberations after learning that it was split 11 to 1—was in fact succinctly described. See *id.*, at 579, n. 10. The Court of Appeal focused its analysis upon "three particular incidents" for the entirely acceptable reason that (as the court said) those incidents constituted "[t]he essence of Packer's complaints" regarding juror coercion. App. to Pet. for Cert. H–15. The opinion set forth many facts and circumstances beyond those three incidents, including the two "critical facts" that the Ninth Circuit said it "failed to consider," 291 F. 3d, at 579, n. 10—the judge's knowledge that Radcliff was the sole dissenting juror prior to his instructing the jury to keep deliberating, App. to Pet. for Cert. H–14, and the fact that the foreman's note, which mentioned Radcliff by name, was read in court, *ibid.* The contention that the California court "failed to consider" facts and circumstances that it had taken the trouble to recite strains credulity. The Ninth Circuit may be of the view that the Court of Appeal did not give certain facts and circumstances adequate weight (and hence adequate discussion); but to say that it did not *consider* them is an exaggeration. There is, moreover, nothing to support the Ninth Circuit's claim that the Court of Appeal did not consider the "cumulative impact" of all the recorded events. Compliance with *Lowenfield* v. *Phelps*, 484 U. S. 231 (1988), does not demand a formulary statement that the trial court's actions and inactions were noncoercive "individually and cumulatively." It suffices that that was the fair import of the Court of Appeal's opinion.

Third and last, the Ninth Circuit faulted the state appellate court for stating that " 'there is nothing improper in urging the jury to consider [the matter] further with the view

to reaching an agreement as long as the language used does not coerce a particular type of verdict.'" 291 F. 3d, at 579. The Ninth Circuit found this statement to be "contrary to" both *Jenkins* v. *United States*, 380 U. S. 445 (1965) *(per curiam)*, and *United States* v. *United States Gypsum Co.*, 438 U. S. 422 (1978), which it construed to prohibit pressing the jurors to arrive at some verdict, not just "'a particular type of verdict.'" 291 F. 3d, at 579. Neither *Jenkins* nor *Gypsum Co.* is relevant to the § 2254(d)(1) determination, since neither case sets forth a rule applicable to state-court proceedings. *Jenkins* and *Gypsum Co.* reversed convictions based on jury instructions given in *federal* prosecutions, and neither opinion purported to interpret any provision of the Constitution. That alone would be enough to defeat a claim that their application to state-court proceedings is "clearly established." *Lowenfield* v. *Phelps, supra,* at 239, n. 2 (citation omitted), however, removed any lingering doubt regarding these cases' application to state convictions when it stated: "[O]ur ruling in *Jenkins* v. *United States* was based on our supervisory power over the federal courts, and not on constitutional grounds. The *Jenkins* Court cited no provision of the Constitution, but rather relied upon other cases involving the exercise of supervisory powers." (The same was true of *Gypsum Co.*) *Jenkins* and *Gypsum Co.* are off the table as far as § 2254(d) is concerned, and the Ninth Circuit erred by relying on those nonconstitutional decisions.

Having determined that the Court of Appeal "failed to apply" clearly established Supreme Court law, 291 F. 3d, at 579 (a phrase which the opinion repeatedly and erroneously substitutes for the more demanding requirement of § 2254(d)(1): that the decision be "contrary to" clearly established Supreme Court law), the Ninth Circuit then proceeded to address the question "whether [the Court of Appeal's] decision constituted error and if so whether the error had a substantial or injurious effect on the verdict." *Ibid.* But that inquiry would have been proper only if the Ninth Circuit

had first found (pursuant to the correct standard) that the California court's decision was "contrary to" clearly established Supreme Court law—which it did not and could not. By mistakenly making the "contrary to" determination and then proceeding to a simple "error" inquiry, the Ninth Circuit evaded § 2254(d)'s requirement that decisions which are not "contrary to" clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but "an *unreasonable* application" of clearly established federal law, or based on "an *unreasonable* determination of the facts" (emphasis added). Even if we agreed with the Ninth Circuit majority (Judge Silverman dissented) that there was jury coercion here, it is at least reasonable to conclude that there was not, which means that the state court's determination to that effect must stand.

*     *     *

The judgment of the Ninth Circuit is reversed.

*It is so ordered.*