**Erik DOWNS, Petitioner,**

v.

**Luis SPENCER, Respondent.**

**No. CIV.A. 02–11092–WGY.**

United States District Court, D. Massachusetts.

Jan. 2, 2003.

Erik Downs, Norfolk, MA, Pro se.

Eva M. Badway, Attorney General's Office, Criminal Bureau, Boston, MA, for Luis Spencer, Respondent.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. INTRODUCTION

Erik Downs ("Downs") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 1998 conviction in the Massachusetts Superior Court sitting in and for the County of Hampden for distribution of cocaine. Downs' petition raises two grounds for re-

lief: (1) that the evidence against him was not sufficient to convict him beyond a reasonable doubt; and (2) that his trial counsel provided him with ineffective assistance, in violation of his Sixth Amendment right to counsel.

Downs was arrested by the Springfield Police Department on October 6, 1998, after Springfield undercover narcotics officer Sergeant Thomas Meleady observed him (via binoculars) taking part in what appeared to be a drug transaction with a woman named Diane Adams ("Adams"). A Hampden County grand jury subsequently returned an indictment charging Downs with distribution of cocaine as a second and subsequent offense.

At Downs' trial, which took place on June 22, 1999, the prosecution adduced evidence that, at approximately 12:00 noon on October 6, 1998, Sergeant Meleady was conducting street-level surveillance in an undercover vehicle in the area of Shattuck Street and College Street in Springfield. Trial. Tr. [Docket No. 11] at 84. Aided with a pair of standard binoculars, Sergeant Meleady noticed a female (subsequently identified as Adams) pacing back and forth on Shattuck Street, looking intently at the vehicles as they drove down the street. *Id.* at 85–86. Sergeant Meleady then observed Adams make eye contact with a white Nissan Sentra as it drove down the street. *Id.* at 86–87. Adams raised her hands, and the vehicle's driver (subsequently identified as Downs) pulled over to the curb, which was located approximately 25 to 40 yards from Sergeant Meleady's vantage point. *Id.* at 87, 101. Sergeant Meleady observed that two other individuals (subsequently identified as Michael Stringer ("Michael") and Logan Stringer ("Logan")) were passengers in Downs's vehicle, with Michael sitting in the front seat and Logan sitting in the back. *Id.* at 87, 102.

Sergeant Meleady then watched as Adams approached the vehicle and engaged in conversation with Michael and Downs. *Id.* at 87. After approximately 15 to 20 seconds, Michael handed Adams a small item, and Adams handed Michael what appeared to be a bill of United States currency, which Michael then passed over to Downs. *Id.* at 87–88. Adams then got into another a car, a white Oldsmobile, which drove away. *Id.* at 88. Downs then drove away in his Nissan Sentra in the same direction. *Id.* On cross-examination, Sergeant Meleady testified that, based on these observations, there was "no doubt in [his] mind" that a drug transaction had just occurred. *Id.* at 106.

Because Sergeant Meleady was working undercover and did not want to reveal himself, however, he did not arrest Downs right away. *Id.* at 89. Instead, he radioed to fellow officers in the area that they should stop the Oldsmobile. *Id.* He then followed Downs's car as it drove away. *Id.*

Officers Timothy O'Shea and Donald Quinn apprehended the Oldsmobile in which Adams was seated, approximately 30 to 40 seconds after receiving Sergeant Meleady's communication. *Id.* at 119–21. Officers O'Shea and Quinn found and seized a rock of crack cocaine from the car. *Id.* at 121–22. They did not, however, find any money or other narcotics in the car. *Id.* at 124–25. Officer O'Shea then left Officer Mary O'Halleran with Adams to arrest her and bring her down to the station, and drove off with another officer, Devon Williams, to join in the pursuit of Downs's Nissan Sentra. *Id.* at 126.

Officers O'Shea and Williams reached Downs' car about five or ten minutes later, at which point Officer O'Shea frisked Downs and found $1,533 in U.S. currency in Downs' left pocket. *Id.* at 127–28. A cell phone and Motorola pager were also recovered from Downs' person, although

no drugs were found on him. *Id.* at 150, 157. Downs was subsequently arrested.

Downs' defense centered on the argument that Sergeant Meleady had misinterpreted the scene that he viewed through his binoculars. In his cross-examinations of Sergeant Meleady, Officer O'Shea, and Officer Williams, Downs' counsel emphasized that Sergeant Meleady had been the only officer to observe the alleged transaction and that he had done so at a distance via binoculars. *Id.* at 105, 129, and 152. At the close of the prosecution's case, Downs' counsel moved for a required finding of not guilty. *Id.* at 162. The motion was denied. *Id.*

In his closing statement, Downs' counsel again stressed the distance from which Sergeant Meleady had viewed the alleged drug transaction and offered an alternative interpretation of what had transpired. He suggested that it was "just as plausible" that Adams had unsuccessfully attempted to sell the cocaine to Downs and his passengers, rather than the other way around, noting that this scenario would also explain why the cocaine was subsequently found in Adams's vehicle. *Id.* at 175. He also argued that the evidence showed that Michael, rather than Downs, was the person who actually engaged in the transaction with Adams and that there was no testimony that "Downs was involved in this supposed distribution." *Id.* at 176.

The jury subsequently convicted Downs of distribution of cocaine. *Id.* at 213.

Downs then pled guilty to the subsequent offense portion of the indictment. *Id.* at 226. He was sentenced to a state prison term of six to eight years. *Id.* at 229.

Downs appealed his conviction to the Massachusetts Appeals Court, raising two grounds. *See* Resp't's Supplemental Ans. [Docket No. 10], Ex. 2 (Defendant's Brief and Record Appendix). First, Downs argued that he had been entitled to a required finding of not guilty. He stated that the evidence was insufficient to prove beyond a reasonable doubt either (1) that a drug transaction had occurred at all, or (2) if such a transaction had in fact occurred, that Downs was the seller rather than the unsuccessful buyer. *Id.* at 10–22. Second, Downs argued that his trial counsel had provided him with ineffective assistance. He stressed that his counsel had improperly elicited, on cross-examination, Sergeant Meleady's statement that there was "no doubt in [his] mind" that a drug transaction occurred between Adams and Downs and that his counsel had compounded his error by telling the jury during closing arguments that Sergeant Meleady's testimony constituted the prosecution's "whole case." *Id.* at 24–26.[1] Downs also noted that, during the prosecution's redirect examination of Sergeant Meleady, his counsel improperly failed to object to Sergeant Meleady's characterization of Downs as the dealer and Adams as the customer.[2] *Id.* at 28–29.

---

1. Downs was referring to the following portion of his counsel's closing argument:

    Sergeant Meleady by his own admission is roughly a hundred feet away in a car ... And I would suggest to you he admitted to the fact on cross-examination that he did not see the item that was given to Miss Adams. And I asked him why, and he said, "I had difficulty viewing that." How believable is that testimony? That's the whole case. That's their whole case, that Ser-

    geant Meleady said he observed activity consistent with a narcotics transaction. And that's all they offer you.
    Trial Tr. at 171–72.

2. Specifically, Sergeant Meleady stated that "[i]n this case here I gave out a description of the customer getting into a vehicle. That vehicle was tailed out and the dealer left the area several seconds later, so I followed the dealer myself." Trial Tr. at 115.

The Massachusetts Appeals Court affirmed Downs's conviction on July 16, 2001, in an unpublished opinion. 52 Mass. App.Ct. 1105, 751 N.E.2d 453 (2001). The court first rejected Downs' claim that he had been entitled to a required finding of not guilty, ruling that the jury was warranted in concluding that Downs had sold the cocaine in question to Adams. *Id.* The court explained:

> [t]he officers' observations of the exchange that occurred, the brief time period between the exchange and their apprehension of Adams, the officers having seen Adams place something on the floor of the car in which she was riding just seconds before the officers found the piece of crack cocaine in the same location, the substantial amount of cash on the defendant in addition to the pager and cellular phone found on or near him, the fact that no drugs were found on the defendant—all of these facts support the conclusion that sufficient evidence existed on which to convict the defendant of distributing cocaine as charged.

*Id.* The court also rejected Downs' ineffective assistance of counsel claim. The court noted that under Massachusetts law, the standard for assessing ineffective assistance of counsel is two-pronged. The defendant must first prove that his counsel's performance "fell measurably below that which might be expected from an ordinary fallible lawyer," and then prove that his case was "prejudiced by counsel's conduct such that the conduct has likely deprived the defendant of an otherwise available, substantial ground of defense." *Id.* (internal citations and quotation marks omitted). In this regard, the court ruled that even assuming, *arguendo,* that defense counsel had erred in eliciting Sergeant Meleady's testimony that he had no doubt that a drug transaction had occurred and in failing to object to Sergeant Meleady's characteriza-

tion of Downs as the dealer, Downs had not demonstrated that these errors significantly prejudiced his defense. *Id.* The court thus rejected this claim and denied Downs's petition.

Downs subsequently filed with the Supreme Judicial court an application for leave to obtain further appellate review ("ALOFAR"). See Resp't's Supplemental Ans. [Docket No. 5], Ex. 5 (Defendant's Application for Further Appellate Review). In his ALOFAR, Downs argued that the Massachusetts Appeals Court had incorrectly analyzed both his sufficiency of the evidence claim and his ineffective assistance of counsel claim. He asserted that the Appeals Court had "reduced the burden of proof in Massachusetts in cases where, as here, no drug was seen changing hands." *Id.* at 6. In support of this argument, he cited other Massachusetts cases in which, he alleged, there *was* "linking evidence" that "permitted an inference beyond a reasonable doubt that contraband found on an alleged buyer was the same unidentified object obtained from the defendant." *Id.* at 7–8. Downs argued that in his case, by contrast, there was no such evidence that a drug transaction had occurred; thus, his conviction was based on evidence that could not support a finding of guilt beyond a reasonable doubt. *Id.* at 8–10. He further argued that, in eliciting Sergeant Meleady's testimony that he had "no doubt" that a drug transaction had occurred, his counsel had undercut this argument, thereby providing him with ineffective assistance. *Id.* at 10–11.

Downs next argued that even if the evidence *were* sufficient to show that he engaged in a drug transaction with Adams, the evidence was still in "equipoise" as to whether Downs had successfully sold the crack or had unsuccessfully attempted to buy it. *Id.* at 11. In this regard, Downs argued that by failing to object when Ser-

geant Meleady referred to him as the "dealer" and to Adams as the "customer," his counsel again had erred to such a degree as to constitute ineffective assistance of counsel. *Id.* at 14. He suggested that, in rejecting this claim, the Appeals Court had reduced "the constitutional standard of prejudice required to prove ineffective assistance of counsel." *Id.* at 6.

The Supreme Judicial Court denied Downs' ALOFAR on September 7, 2001. 435 Mass. 1101, 758 N.E.2d 143 (2001) (table). Downs then filed a petition for habeas corpus in this Court. His petition raises the same grounds that he has exhausted in state court: (1) that he was entitled to a required finding of not guilty, and that in rejecting this claim, the Appeals Court reduced the legal burden of proof for a drug conviction; and (2) that his counsel provided him with ineffective assistance, and that in rejecting this claim, the Appeals Court reduced the constitutional standard of prejudice required to prove ineffective assistance of counsel.

## II. DISCUSSION

Downs' claims have been exhausted in the state courts and are properly before this Court. Under the standard outlined by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court cannot grant habeas corpus relief on either of these claims unless the Massachusetts Appeals Court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1) (2000).

### A. Downs' Sufficiency of the Evidence Claim

The Court begins with an analysis of Downs' claim that the evidence against

him was not sufficient to find him guilty beyond a reasonable doubt and that the Massachusetts Appeals Court's affirmance of his conviction reduced the legal burden of proof required to prove a drug distribution. The federal basis of this challenge lies in the Supreme Court's holding in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) that Fourteenth Amendment due process requires that a conviction cannot stand unless there was sufficient evidence to justify a rational trier of the facts in finding guilt beyond a reasonable doubt.

█ In assessing Downs' claim that the *Jackson* standard was not satisfied here, the Massachusetts Appeals Court did not apply a standard that was contrary to clearly established Federal law. A state court decision is contrary to clearly established Federal law only if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Here, quite the opposite occurred. The Appeals Court's explicit inquiry was whether there were facts to "support the conclusion that sufficient evidence existed on which to convict the defendant of distributing cocaine as charged." *Commonwealth v. Downs*, 52 Mass.App.Ct. at 1105, 751 N.E.2d 453. This inquiry was entirely consonant with that outlined in *Jackson*. That the Appeals Court did not include a specific citation to the Supreme Court's holding in *Jackson* is entirely irrelevant. *See Early v. Packer*, — U.S. —, —, 123 S.Ct. 362, 364, 154 L.Ed.2d 263 (2002) (noting that no such citations are required; indeed, a state court is not even required to possess "awareness of [the relevant Su-

preme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them"). Accordingly, Downs' argument that the Appeals Court adopted a new standard that impermissibly reduced the legal burden of proof in drug distribution cases is entirely without merit. Undergirding the Appeals Court's analysis of Downs' claim was the long-standing constitutional test of whether there was sufficient evidence to support the jury's verdict.

Nor was the Appeals Court's decision an unreasonable application of clearly established Federal law. A state court decision is considered unreasonable when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Taylor*, 529 U.S. at 407, 120 S.Ct. 1495. The key question is whether the state court's application of law was "objectively unreasonable,"—that is, whether it had "some increment of incorrectness beyond error ... great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall*, 303 F.3d 24, 36–37 (1st Cir.2002) (internal citations omitted).

To determine the reasonableness of the Appeals Court's decision, the Court must refer to the underlying constitutional standard for this claim, as outlined in *Jackson* and described above. *See Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.2001). The First Circuit has noted that the nature of *Jackson* claims render them an especially challenging basis on which to prevail in the habeas context. *See id.* at 19–20 (stating that federal courts "should be particularly cautious about issuing habeas" on grounds that the evidence was insufficient to support the jury's verdict, given the jury's firsthand exposure to the evidence).

. Indeed, here this Court rules that the determination of the Appeals Court was entirely reasonable. The Appeals Court examined the considerable evidence against Downs—including Sergeant Meleady's eyewitness testimony, the recovery of a sizeable sum, as well as a cellular phone and pager from Downs' person, and the recovery of the crack cocaine from Adams' car—and concluded that a rational fact-finder could have returned a guilty verdict based on this evidence. This Court concurs. Downs is correct that "[t]he fact that Ms. Adams was seen stopping a car with defendant and several other person [sic] is not sufficient for a guilty verdict," Pet. [Docket No. 3] ¶ 12(C), but he fails to recognize that far more evidence was adduced against him at trial, as detailed above. Similarly, any argument that the above evidence rendered it equally likely that he had unsuccessfully attempted to purchase cocaine from Adams as that he had successfully sold cocaine to her is without merit, given the nature of the evidence against him. Thus, the Appeals Court's rejection of this claim was not objectively unreasonable, and the Court denies Downs' petition with respect to this claim.

**B. Downs' Ineffective Assistance of Counsel Claim**

Downs' second claim is that his counsel provided him with ineffective assistance, in violation of his Sixth Amendment right to counsel. In support of this contention, he states that his counsel improperly elicited, on cross-examination, Sergeant Meleady's opinion that he had "no doubt" that a drug transaction had occurred and that his counsel reinforced his blunder by "reminding the jurors of this damaging evidence in his closing argument." Pet. ¶ 12(B).

The federal standard for ineffective assistance of counsel claims, outlined in

*Strickland v. Washington,* examines whether the defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and whether counsel's "deficient performance prejudiced the defense." 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing Downs' ineffective assistance of counsel claim, the Appeals Court did not apply a standard that was contrary to this clearly established Federal law. It applied the Massachusetts standard for ineffective assistance of counsel, *see supra* p. 335 which has been held repeatedly to be the functional equivalent of the federal *Strickland* standard. *See, e.g., Stephens v. Hall,* 294 F.3d 210, 214–15 (1st Cir.2002).

Nor did the Appeals Court's rejection of Downs' ineffective assistance of counsel claim constitute an unreasonable application of clearly established Federal law. In assessing the reasonableness of the Appeals Court's decision with regard to this claim, the Court returns to the underlying federal *Strickland* standard. As noted above, the Strickland standard encompasses two prongs: "performance" and "prejudice". The "performance" prong requires a showing that defense counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; the "prejudice" prong requires a showing that there is a reasonable probability that, in the absence of those errors, the result would have been different.

The Appeals Court focused its inquiry on the second prong of the above analysis—prejudice—and ruled that even if Downs' counsel's performance had been defective in the above respects, those errors were harmless and did not prejudice Downs' case. *Commonwealth v. Downs,* 52 Mass.App.Ct. at 1105, 751 N.E.2d 453. This Court concurs and notes that in no way did the Appeals Court's conclusion reduce the constitutional standard of prejudice required to prove ineffective assistance of counsel. The burden of demonstrating prejudice is a high one, and Downs fell far short of meeting it.

Moreover, this Court notes that, not only did Downs fail to satisfy the prejudice prong, but he also manifestly failed to satisfy the performance prong. The errors alleged by Downs simply do not rise to the level of ineffective assistance required to prevail on *Strickland's* first prong. *See Ouber v. Guarino,* 293 F.3d 19, 27 (1st Cir.2002) ("the complex dynamics of trial engender numerous missteps, but only the *most inexcusable* will support a finding that counsel's performance was so substandard as to compromise a defendant's Sixth Amendment right") (emphasis added). Here, Downs' counsel properly focused his cross-examination of Sergeant Meleady on the issue of Sergeant Meleady's distance from, and ability to see into, Downs' car. That one such question prompted Sergeant Meleady's statement that he had "no doubt in [his] mind" that a drug transaction had occurred does not render counsel's entire performance constitutionally ineffective. Nor did counsel's reference during his closing statement in regard to the centrality of Sergeant Meleady's testimony render his performance ineffective. The record makes clear that counsel made this argument to emphasize that the Commonwealth's case rested on the observations of a witness who had been located a substantial distance away. Notwithstanding Downs' apparent belief that his counsel could have made this point in a more convincing fashion, this simply is not a case of ineffective assistance.

Accordingly, the Court rules that the Appeals Court was not objectively unreasonable in rejecting Downs' ineffective as-

sistance of counsel and rejects this claim as well.

## III.  CONCLUSION

Habeas relief is unwarranted in this case.  The Massachusetts Appeals Court analyzed Downs' sufficiency of the evidence and ineffective assistance of counsel claims with standards that were entirely consonant with Federal law, and the Appeals Court's rejection of those claims was not objectively unreasonable.  Accordingly, Downs' habeas petition [Docket No. 3] is DENIED.

SO ORDERED.