**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

MAR 14 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STEVEN LEE NEWBERG, | No. 16-17109 |
| Petitioner-Appellant, | D.C. No. 3:07-cv-00189 |
| v. | |
| JACK PALMER; ATTORNEY GENERAL FOR THE STATE OF NEVADA, | MEMORANDUM[*] |
| Respondents-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Senior District Judge, Presiding

Argued and Submitted February 15, 2018
San Francisco, CA

Before: BEA and N.R. SMITH, Circuit Judges, and NYE,[**] District Judge.

Petitioner-Appellant Steven Lee Newberg ("Newberg") appeals from the

district court's denial of habeas relief on his claim that juror bias deprived him of

his rights under the Sixth and Fourteenth Amendments. This court reviews *de*

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable David C. Nye, United States District Judge for the
District of Idaho, sitting by designation.

*novo* "allegations of juror misconduct and prejudicial impact in habeas cases."

*Caliendo v. Warden of California Men's Colony*, 365 F.3d 691, 694 (9th Cir.

2004). However, this court presumes state court findings of fact to be correct

unless the petitioner rebuts them with clear and convincing evidence. *Id.* at

695 (citing 28 U.S.C. § 2254(e)(1)). We have jurisdiction under 28 U.S.C. § 2253

and we affirm.

Newberg's habeas petition is subject to the provisions of the Antiterrorism

and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Under

AEDPA, federal courts will not grant habeas relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim [in state court] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is "contrary to" "clearly established

federal law" if the state court "'applies a rule that contradicts the governing law set

forth in Supreme Court cases' or . . . 'confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives

at a result different from our precedent.'" *Caliendo*, 365 F.3d at 695 (quoting

*Early v. Packer*, 537 U.S. 3, 8 (2002)).

"[W]hen faced with allegations of improper contact between a juror and an outside party, courts apply a two-step framework." *Godoy v. Spearman*, 861 F.3d 956, 959 (9th Cir. 2017). "At step one, the court asks whether the contact was 'possibly prejudicial,' meaning it had a 'tendency' to be 'injurious to the defendant.'" *Id.* (quoting *Mattox v. United States*, 146 U.S. 140, 150 (1892)). If so, the court "proceeds to step two, where the 'burden rests heavily upon the [state] to establish' the contact was, in fact, 'harmless.'" *Id.* (quoting *Remmer v. United States*, 347 U.S. 227, 229 (1954)). Newberg argues that the Nevada Supreme Court's[1] decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" because it denied Newberg's claim at step one—that is, without deeming the juror contact presumptively prejudicial and proceeding to step two to shift the burden to the government to establish harmlessness.

The United States Supreme Court has observed that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips,* 455 U.S. 209, 217 (1982). "Given this reality, if an unauthorized communication with a juror is *de minimis,* the defendant must show that the communication could have influenced the verdict before the burden

---

[1] "When reviewing a state court's determination under AEDPA, we look to the last reasoned decision that finally resolves the claim at issue." *Godoy*, 861 F.3d at 962 (quotation marks and citation omitted).

of proof shifts to the prosecution." *Caliendo*, 365 F.3d at 696; *see also United States v. Olano*, 507 U.S. 725, 740 (1993) (declining to "presume prejudice" in "analyz[ing] outside intrusions upon the jury for prejudicial impact"); *Godoy*, 861 F.3d at 967 (citing *Caliendo* and noting that "[t]he contact must 'raise a credible risk of influencing the verdict' before it triggers the presumption of prejudice"). Therefore, step one of the two-step framework described in *Godoy* requires state courts to determine whether the alleged external contact was possibly prejudicial before proceeding to shift the burden to the government.

To that end, this court has identified five factors courts should consider "in determining whether the communication raised a risk of influencing the verdict": (1) whether the communication concerned the case; (2) the length and nature of the contact; (3) the identity and role at trial of the parties involved; (4) evidence of actual impact on the juror; (5) the possibility of eliminating prejudice through a limiting instruction. *Caliendo*, 365 F.3d at 697–98. Here, the facts recited by the Nevada Supreme Court showed that the juror in question saw approximately 2–3 seconds of a television news story, without audio, which included a picture of the courtroom where Newberg's trial was taking place and the words "serial rapist." The juror stated that she did not associate this clip with Newberg's trial. The external contact was accidental and brief. There was no suggestion the government played any role in producing the story on the television. Furthermore,

the external material was public; it was not directed to or intended for the juror personally. Newberg does not claim that the juror had any special interest in or sensitivity to the content of the external material. The juror promptly reported the incident to the court, and the court immediately investigated the matter and reminded the juror of her duty of impartiality. Finally, in answer to the court's question whether what she saw would affect her judgment of the case being tried, the juror reported that she would not look beyond "the facts in this particular case."

Reasonable minds might differ as to the prejudicial impact of the contact alleged here. However, on the facts presented to the Nevada Supreme Court, the *Caliendo* factors permit a reasonable court to find that the contact was *de minimis*. Applying AEDPA's deferential standard, we cannot say that the Nevada Supreme Court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

**AFFIRMED.**