Martin v. Warden, NHSP                    CV-03-148-JD  10/29/03

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Kelsey A. Martin</u>

     v.                                  Civil No. 03-148-JD
                                         Opinion No. 2003 DNH 187
<u>Jane Coplan, Warden</u>
<u>New Hampshire State Prison</u>


                         O R D E R


     Kelsey A. Martin, proceeding pro se, seeks relief pursuant
to 28 U.S.C. § 2254 from his state conviction and sentence on one
count of aggravated felonious sexual assault.  Martin alleges
four grounds in support of his petition for a writ of habeas
corpus:  that the indictment was duplicitous, that prosecutorial
misconduct affected the outcome of his trial, that the trial
court failed to question a juror as to her bias and failed to
record certain bench conferences, and that his counsel provided
constitutionally ineffective assistance.  Both Martin and the
warden move for summary judgment.


                     <u>Standard of Review</u>

     If the state court adjudicated the petitioner's claim on
the merits, a federal habeas court must decide whether the state
court decision "was contrary to, or involved an unreasonable
application of, clearly established Federal law," or "resulted in

a decision based on an unreasonable determination of the facts . . . ." § 2254(d); see also Price v. Vincent, 123 S. Ct. 1848, 1852 (2003).

Adjudication on the merits does not mean that the state court necessarily decided the claim under federal law. Early v. Packer, 537 U.S. 3, 8 (2002). If the state court decided the federal claim under federal or state law, the federal habeas court must determine whether that decision is contrary to clearly established Supreme Court precedent. Id. On the other hand, if the state court did not address the merits of a properly preserved federal claim at all, the federal court reviews the decision under a de novo standard. Gruning v. Dipaolo, 311 F.3d 69, 71 (1st Cir. 2002). "Furthermore, . . . state-court determinations of factual issues 'shall be presumed to be correct,' unless the petitioner rebuts the presumption 'by clear and convincing evidence.'" Niland v. Hall, 280 F.3d 6, 11 (1st Cir. 2002) (quoting § 2254(e)(1)).

I.  Summary Judgment

    Summary judgment is appropriate in habeas proceedings, as in other civil actions, when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Fed. R. Civ. P. 81(a)(2); Rule 11 of the Rules Governing § 2254 Cases.

    Martin was convicted in 1998 of sexually assaulting a four year old girl.  Martin appealed his conviction, but he did not brief the issues, which he now raises for federal habeas relief, and those issues were deemed waived.  State v. Martin, 145 N.H. 313, 315 (2000).  In 2002, Martin filed a motion for a new trial, raising the issues he now pursues here.  The motion was denied on June 28, 2002, and his motion for reconsideration was denied a month later.  The New Hampshire Supreme Court denied Martin's appeal.

    In her memorandum in support of her motion for summary judgment, the warden contends that because the issues Martin now raises in his petition here were not raised at trial or in Martin's direct appeal, they were procedurally defaulted.  Although the warden concedes that the issues were raised in Martin's motion for a new trial, she asserts that the state court

3

lacked jurisdiction to consider that motion because it was untimely filed. As a result, the warden argues, relying on a Seventh Circuit case, the only issue before this court is ineffective assistance of counsel due to procedural default.

In her answer to the petition for habeas corpus, the warden admitted that Martin exhausted his state remedies but does not mention procedural default. In her motion for summary judgment, the warden states: "The record establishes that all of the petitioner's claims were adjudicated on the merits by the courts of New Hampshire, whose decisions were not contrary to, and did not involve an unreasonable application of, clearly established Federal law." The warden argues in her memorandum in support of summary judgment that the deferential standard applies to "the state court's decision." In addition, when addressing the merits of Martin's claims, the warden cites to the state court's decision on Martin's motion for a new trial as the operative decision for review and appears to address the claims on the merits, rather than in the limited context of ineffective assistance of counsel.[1] As such, the warden's procedural default

---

[1]In doing so, however, the warden cites New Hampshire cases as the operative law, rather than federal law as required by § 2254(d).

4

theory is not consistently nor persuasively presented.[2]

To compound the confusion, in her objection to Martin's motion for summary judgment, the warden changes theories and argues, based on a New Jersey case, that Martin's untimely motion for a new trial should be deemed to have been a habeas corpus petition. As such, the warden argues, issues other than a claim of ineffective assistance of counsel were waived because they were not raised on direct appeal. The warden further surmises that the superior court had to review the issues presented under the Strickland v. Washington, 466 U.S. 668 (1984), standard.

Despite the warden's creative interpretation of the state proceedings, the state court ruled on the issues presented in Martin's motion for a new trial and did not consider the motion as a petition for habeas corpus. The state court did not cite Strickland and addressed ineffective assistance of counsel only as to the claim raised by Martin. This court will not reconfigure the state court's decision to suit the warden's new theory. Therefore, the warden's motion, which is at best a study in confusion premised on an incorrect version of procedural

---

[2]Further, it does not appear that the New Hampshire Supreme Court necessarily treats the time limitation in RSA 526:4 as jurisdictional in the sense of depriving the court of the authority to consider an untimely motion. See, e.g., Bricker v. Sceva Speare Hosp., 115 N.H. 709, 712 (1975).

events, is summarily denied.

In its decision denying Martin's motion for a new trial, the state court addressed most of Martin's claims on the merits. The court, however, cited no legal authority, state or federal, as the bases for its rulings. Martin has not challenged the factual bases for the state court decision. Therefore, to the extent the state court addressed the issues Martin raised, the decision is reviewed to determine whether it is contrary to clearly established Supreme Court precedent. See § 2254(d)(1); Early, 537 U.S. at 8. As to issues that are not adjudicated on the merits, the de novo standard applies. Gruning, 311 F.3d at 71.

A.  Duplicitous Indictment

Martin contends that the indictment was duplicitous because it alleged that he sexually assaulted the victim "by knowingly inserting his finger or some other object into [her] vaginal opening." He argues that the indictment charged two distinct offenses: penetration by his finger and penetration by some other object. He further argues that the jurors may not have unanimously found which crime he committed and that he is at risk of double jeopardy.

Duplicity in an indictment occurs when two or more separate offenses are joined in a single count. United States v.

Verrecchia, 196 F.3d 294, 297 (1st Cir. 1999). An indictment is not duplicitous, however, when it alleges alternative means of committing a single crime. Schad v. Arizona, 501 U.S. 624, 631 (1991). "[T]he prohibition against duplicitous indictments arises primarily out of a concern that the jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense." United States v. Valerio, 48 F.3d 58, 63 (1st Cir. 1995). "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" Brown v. Ohio, 432 U.S. 161, 165 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969))); accord Perez v. Spencer, 2003 WL 21518742, *3 (D. Mass. July 2, 2003) (considering double jeopardy in context of duplicitous indictment).

Martin was found guilty and convicted on one count of aggravated felonious sexual assault in violation of New Hampshire Revised Statute Annotated ("RSA") 632-A:2, I. RSA 632-A:2, I provides that "[a] person is guilty of the felony of aggravated felonious sexual assault if he engages in sexual penetration with another person under any of the following circumstances." Sexual penetration is defined to include "[a]ny intrusion, however

7

slight, of any part of the actor's body or any object manipulated by the actor into genital or anal openings of the victim's body." RSA 632-A:1, V(e).

In the language of RSA 632-A:2, I and the indictment, the crime charged was sexual penetration. Sexual penetration may be accomplished by a variety of alternative means. Martin was charged with alternative means of committing the crime: "by knowingly inserting his finger or some other object," which is not duplicitous.

In response to Martin's motion for a new trial, the state court found that the two means alleged in the indictment did not cause confusion or put Martin at risk of double jeopardy because there was no evidence at trial that he used any thing other than his finger in committing the assault. Martin has not shown that the state court's ruling is contrary to Supreme Court precedent.


B. Prosecutorial Misconduct

Martin asserts that the prosecutor engaged in misconduct by vouching for the victim's credibility, eliciting testimony from the victim's physician and the investigating officer to vouch for the victim's credibility, knowingly using false testimony and failing to correct perjured testimony, intentionally inflaming the passions of the jury, making inappropriate remarks about

8

defense counsel, and violating a variety of rules, standards, and standing pretrial orders.  The issues are addressed separately.


1.  Vouching.

Prosecutorial vouching occurs when the prosecutor puts the prestige of the government behind the credibility of a witness by telling the jury that he or she believes the witness testified truthfully.  See United States v. Young, 470 U.S. 1, 11 (1985); Berger v. United States, 295 U.S. 78, 88-89 (1935); United States v. Millan, 230 F.3d 431, 438 (1st Cir. 2000).  A prosecutor may argue reasons that a witness is likely to be truthful, as long as he or she does not provide personal assurances of truthfulness. United States v. Martinez-Medina, 279 F.3d 105, 119 (1st Cir. 2002).  Improper remarks, that do not otherwise implicate the defendant's constitutional rights, must be evaluated in the context of the trial as a whole to determine their likely effect. Young, 470 U.S. at 12-13; United States v. Wihbey, 75 F.3d 761, 771-72 (1st Cir. 1996).

The prosecutor's remarks in her closing argument as to the likely truth of the victim's testimony did not suggest her own assurances as to the witness's credibility.  Instead, she gave reasons why the jury should find that the witness testified truthfully.  Her argument that the evidence showed that the

victim had been consistent in her identification of the defendant as the one who touched her was also appropriate argument. In addition, the defense theory was not that the victim was lying, but was that she was mistaken. Defense counsel in his closing argument stated that the victim believed that she testified truthfully but she mistakenly identified the wrong person.

The state court found that the prosecutor made reasonable inferences from the evidence. Viewing the arguments as a whole, the state court concluded that no improper remarks were made. Martin has not shown that the state court's decision is contrary to Supreme Court precedent.

Martin also challenges the prosecutor's questioning of the victim's physician, Dr. Martha Toy Fountain, who testified as a medical expert witness for the state. Martin contends that Dr. Fountain's description of the victim as she reported the assault was beyond the scope of New Hampshire Rule of Evidence 803(4) and improperly bolstered the victim's credibility as to her identification of the defendant as the person who assaulted her.[3]

Similarly, Martin contends that Detective Laura Stoessel's testimony improperly vouched for the credibility of the victim.

_____

[3]Martin also argues that the prosecutor violated a standing order not to elicit improper opinion testimony from Dr. Fountain. He did not include such an order in the record.

Detective Stoessel interviewed the victim after the assault.  At trial, Detective Stoessel described the manner in which the victim identified the person who committed the assault.

The state court did not address the challenged testimony by Dr. Fountain and Detective Stoessel.  Because the issue was not adjudicated on the merits, it is reviewed de novo.  Martin candidly acknowledges that he could not find Supreme Court precedent to support his claim.  Instead, he relies on New Hampshire cases pertaining to the scope of the hearsay objection for medical diagnosis and treatment and improper comment by a police officer on the credibility of a victim's statement.

To the extent Martin challenges Dr. Fountain's testimony as hearsay, his claim would arise under the Confrontation Clause of the Sixth Amendment.  See Lilly v. Virginia, 527 U.S. 116, 123-24 (1999).  The parts of the testimony Martin quotes, however, are not hearsay.  In addition, the victim testified at his trial and was cross-examined.  Therefore, he has not shown that a Confrontation Clause issue exists in this case.

Testimony as to the credibility of another witness is generally improper.  See United States v. Rosario-Diaz, 202 F.3d 54, 65 (1st Cir. 2000).  An expert witness cannot give his or opinion as to the truthfulness of a victim or another witness unless properly qualified to do so.  See United States v. Shay,

11

57 F.3d 126, 131-32 (1st Cir. 1995); <u>see also</u> <u>United States v. Charley</u>, 189 F.3d 1251, 1267 (10th Cir. 1999).  An investigating officer, however, may describe the method used to determine the veracity of certain statements.  <u>Rosario-Diaz</u>, 202 F.3d at 65; <u>accord</u> <u>Lam v. Kelchner</u>, 304 F.3d 256, 272 (3d Cir. 2002).  To be cognizable for purposes of habeas relief, improper vouching must affect the fundamental fairness of the trial to the extent of causing a due process violation.  <u>See</u> <u>id.</u> at 271 (citing <u>Darden v. Wainwright</u>, 416 U.S. 637, 643 (1974)); <u>Maurer v. Minn. Dep't of Corr.</u>, 32 F.3d 1286, 1289 (8th Cir. 1994).

The testimony challenged by Martin shows the circumstances under which the victim identified him as the person who assaulted her to her doctor and to the investigating officer.  In their quoted testimony, neither witness testified as to whether the victim was telling the truth.  In addition, as noted above, the defense did not challenge the truthfulness of the victim's belief in her identification of Martin as her assailant, but instead argued that she was mistaken.  Therefore, Martin has not shown that a due process violation occurred due to the challenged testimony of Dr. Fountain or Detective Stoessel.

12

2. False testimony.

Martin was tried three times.  State v. Martin, 145 N.H. 313 (2000).  Martin's conviction in the first trial was reversed on appeal.  State v. Martin, 142 N.H. 63, 64 (1997).  The second trial resulted in a hung jury, and Martin was tried a third time, which resulted in a conviction.  Martin contends that differences in the victim's testimony in the trials demonstrate that she testified falsely at his third trial and that the prosecutor knew her testimony was false but failed to correct it.

"First, it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."  Napue v. Illinois, 360 U.S. 264, 269 (1959); see also Mooney v. Holohan, 294 U.S. 103, 112 (1935).  A due process violation occurs if the prosecution used evidence that it knew or should have known was false and "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  United States v. Agurs, 427 U.S. 97, 103 (1976); accord Mastracchio v. Vose, 274 F.3d 590, 601 (1st Cir. 2001).  However, inconsistencies in testimony alone, which are explored on cross-examination, do not amount to a due process violation.  See United States v. Myers, 294 F.3d 203, 209-10 (1st Cir. 2002).

The state court did not directly address this issue.  Given

the age of the victim and taken in context, her testimony was not contradictory or false.  In addition, the defense had ample opportunity to explore any inconsistencies in her testimony through cross-examination.  Therefore, Martin has not shown that false testimony was used to obtain his conviction.

### 3.  Prosecutor's comments about defense counsel and to incite the emotions of the jury.[4]

Martin contends that during closing argument the prosecutor's remarks about defense counsel's tactics in cross-examining the victim and her description of the victim were improper.  The state court did not address either argument in the decision on Martin's motion for a new trial.  Therefore, the issues are reviewed under a de novo standard.

Prosecutorial comments that impugn the integrity or credibility of defense counsel are improper.  See Young, 470 U.S. at 10; United States v. Bernard, 299 F.3d 467, 488 (5th Cir. 2002); United States v. Joyner, 191 F.3d 47, 54 (1st Cir. 1999).  Argument by the prosecutor that is intended to inflame or appeal

---

[4]Martin separately argues that the prosecutor's argument violated a variety of rules and standards.  While violation of such rules and standards may demonstrate impropriety, that alone does not show a due process violation.  See Young, 470 U.S. at 10.

to the emotions or passions of the jury is also improper.  <u>Young</u>, 477 U.S. at 10; <u>Darden</u>, 477 U.S. at 180; <u>United States v. Manning</u>, 23 F.3d 570, 573 (1st Cir. 1994).  Improper prosecutorial argument or comment supports a writ of habeas corpus only if the comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  <u>Darden</u>, 477 U.S. at 181 (quoting <u>Connelly v. DeChristoforo</u>, 416 U.S. 637, 642 (1974)).

During her closing argument, the prosecutor referred to the victim's young age, the details of the assault, and the examination by her doctor.  The prosecutor's comments were in part an effort to explain any inconsistencies in the victim's testimony.  Although the prosecutor presented the victim in a sympathetic light, her comments do not fall to the level of improper attempts to incite the jury's emotions.  The prosecutor's description of defense counsel's cross-examination of the victim as manipulative perhaps stretched appropriate bounds of argument.  Taken in the context of the trial as a whole, however, Martin has not shown that the prosecutor's comments made the trial so unfair as to deny him due process.

15

C.  Judge's Decisions as to Jury Bias and Record

The Sixth Amendment, made applicable to the states by the Fourteenth Amendment, guarantees a criminal defendant the right to trial by an impartial jury.  Neb. Press Ass'n v. Stuart, 427 U.S. 539, 551 (1976).  Martin contends he was denied this right because one of the jurors made a remark, overheard by defense counsel and members of Martin's family, that indicated she had prejudged his guilt.  Martin states that his counsel told him on the first day of trial that the judge would not address the question of jury impartiality because he did not feel there was "enough to go on."

In the decision on Martin's motion for a new trial, the state court judge explained that he did not remember the incident involving a comment by a juror.  He found, however, that Martin was mistaken that the comment was made by a juror who had been chosen for his case, based on the date of the comment, the date his jury was selected, and the beginning of his trial.  The judge stated that he saw no evidence of a lack of impartiality and also noted his instruction to the jury to decide the case based on the evidence, without prejudice or sympathy.  The court found that there was no bias in the case.

Martin offers nothing to contradict the court's findings. Therefore, he has not demonstrated that he is entitled to summary

judgment on the issue of jury impartiality.

Martin also contends that the trial court failed to record bench conferences in violation of the Court Reporters Act, 28 U.S.C. § 753. He does not appear to pursue that claim for purposes of summary judgment. The state court reviewed the transcript and explained the rulings that were made. As Martin does not challenge the state court's resolution of that issue in his motion, he has not shown that he is entitled to summary judgment in his favor on that issue.


D.   Ineffective Assistance of Counsel

At the end of his motion, Martin contends that his trial counsel was ineffective due to his failure to object to the errors he cites in support of his habeas claims. To demonstrate ineffective assistance of counsel, Martin must establish "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." Castillo v. Matesanz, 2003 WL 22400214, at *8 (1st Cir. Oct. 22, 2003) (citing Strickland v. Washington, 466 U.S. 668 (1984)).

The state court ruled that defense counsel was an

experienced criminal defense counsel and that his representation of Martin was "of the highest quality." The state court further ruled that "no factual or legal basis [exists] for this Court to find that the defendant had ineffective of counsel in this case." State v. Martin, 95-S-793, at 9 (N.H. Superior Ct. June 28, 2002). Martin has not shown that the state court's findings are erroneous. He also has not shown that serious errors occurred at his trial. Therefore, he is not entitled to summary judgment on the claim of ineffective assistance of counsel.

E. Motion for Appointment of Counsel

Martin moves for the appointment of counsel to represent him at an evidentiary hearing. Because no factual issues exist that would require a hearing, his motion is denied. See 28 U.S.C. § 2254(e); see also Rule 8(c), Rules Governing § 2254 Cases.

II. Resolution of the Petition for a Writ of Habeas Corpus

In the context of deciding Martin's motion for summary judgment, the court has carefully reviewed the claims he has raised, the applicable legal standards, and the record. No factual issues exist in this case that prevent a decision on the merits at this stage. As is discussed in detail above, to the extent the state court addressed the issues Martin raises, that

18

decision is not contrary to federal law as established by Supreme Court precedent. With respect to the issues the state court did not address, which were reviewed de novo, Martin's conviction and sentence is not in violation of his federal rights. Therefore, Martin's petition for a writ of habeas corpus is denied.

<u>Conclusion</u>

For the foregoing reasons, the petitioner's motion for summary judgment (document no. 9) and motion for appointment of counsel (document no. 4) are denied. The respondent's motion for summary judgment (document no. 8) is also denied.

The petitioner for a writ of habeas corpus is denied. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

October 29, 2003

cc: Kelsey A. Martin, pro se
    Nicholas P. Cort, Esquire

19