O’SCANNLAIN, Circuit Judge,
dissenting:
The Court affirms the grant of a petition for writ of habeas corpus in this death penalty case by holding that the California courts did not determine—in a full, fair, and adequate hearing—the merits of Andre Burton’s request for self-representation during his murder trial. I respectfully disagree because I am not persuaded that the California Supreme Court decision was contrary to the Constitution and laws of the United States. Rather, under the version of 28 U.S.C. § 2254 applicable before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), habeas corpus should have been denied.
1
.A
On February 25,1983, during a robbery, Burton shot Anwar Khwaja in the forehead and in the eye, then shot Khwaja’s mother, fatally, in the chest. California v. Burton, 48 Cal.3d 843, 258 Cal.Rptr. 184, 771 P.2d 1270, 1274 (1989). Burton was “smiling or laughing contentedly” while committing these crimes and “chuckled” while escaping. Id.
Beginning on August 10, 1983, the day trial was set to start, Burton made four requests to represent himself pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).[1] See In re Burton, 40 Cal.4th 205, 52 Cal.Rptr.3d 86, 147 P.3d 1014, 1024-25 (2006). The trial court denied each of those four Faretta requests as untimely. See id. The jury convicted Burton of murder' and three counts of robbery, and the penalty was fixed at death. Id. at 1017.
After the California Supreme Court affirmed Burton’s convictions and death sentence, Burton, 258 Cal.Rptr. 184, 771 P.2d at 1291, Burton filed state and federal habeas petitions. In state habeas proceedings, Burton alleged that he was denied the Tight to present a guilt-phase defense under California v. Frierson, 39 Cal.3d 803, 218 Cal.Rptr. 73, 705 P.2d 396 (1985).[2] To evaluate Burton’s Frierson claim, the California Supreme Court appointed a referee to hear evidence and to make findings *1164 of fact in response to various questions, including: “Did [Burton’s attorney, Ronald Slick] have reason to believe that petitioner’s in court requests to represent himself were made, for the purpose of delaying trial, rather than dissatisfaction with Slick’s trial strategy?” Burton, 52 Cal. Rptr.3d 86, 147 P.3d at 1018.
The referee, a superior court judge appointed for this task, heard testimony from 15 witnesses over 14 court days. See id. 52 Cal.Rptr.3d 86, 147 P.3d at 1016, 1019. As part of his findings of fact, the referee concluded that Burton “tried to delay the [trial] by seeking to represent himself.” In 2006, the California Supreme Court reviewed the referee’s report, accepted the referee’s factual finding that Burton’s Faretta motions “reflected a dissatisfaction with Slick’s failure to delay the trial,” and denied habeas relief. Id. 52 Cal.Rptr.3d 86, 147 P.3d at 1026, 1030.
In federal habeas proceedings, the district court reviewed the state- court record de novo and granted the writ, holding, contrary to the California Supreme Court, that Burton’s request to represent himself was not made for the purpose of delay.
B
Whether a petitioner’s request to exercise his right under Faretta to represent himself at trial is timely is controlled by Fritz v. Spalding, 682 F.2d 782 (9th Cir. 1982). In Fritz, we held that “a motion to proceed pro se is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay.” Id. at 784.[3]
As the majority observed, the district court erred when it treated the determination of Burton’s purpose in seeking to represent himself as a mixed question of law and fact. Maj. Op. at 1148-49. Burton’s purpose is simply a question of fact, and the district court owed deference to the state court determination of fact unless an exception enumerated in § 2254 applies. But then the majority errs when it upholds de novo review based on its conclusion that the California Supreme Court did not resolve the merits of the factual question, see § 2254(d)(1), and' that Burton was therefore denied a full, fair, and adequate state court hearing, see § 2254(d)(2), (6).[4] Maj. Op. at 1148-49.
*1165 Applying § 2254(d)(1), the majority essentially concludes that the state courts did not make findings of fact regarding Burton’s purpose because the California Supreme Court asked the referee to determine Slick’s belief about Burton’s purpose rather than asking about Burton’s purpose directly. Recognizing that the California Supreme Court did make some potentially relevant findings, the majority seeks to explain away those findings by arguing that they must be considered “in context.” The majority thus concludes that the state supreme court did not give a Faretta, answer because it asked a Frierson question.
Applying § 2254(d)(2), (6), the majority concludes that the Frierson proceedings were inadequate to resolve Burton’s Faret-ta claim fully and fairly because the state courts misallocated the burden of proof and because they failed to consider key aspects of the record and to apply the proper legal inquiry.
I respectfully disagree with the majority’s application of these three provisions.
II
A
Contrary to the majority’s opinion, the California courts did indeed determine the merits of Burton’s purpose in seeking to represent himself; therefore, § 2254(d)(1) provides no basis, for withholding deference. Rather than focus on the facts determined by the referee and accepted by the California Supreme Court, the majority mistakenly focuses on the context in which those facts were found.
The majority’s analysis misses the trees for the forest.
1
What did the California Supreme Court actually hold with respect to the factual findings made in Burton’s state habeas proceedings? There, Burton invoked “statements he made at trial in the course of his four motions for self-representation.” In re Burton, 40 Cal.4th 205, 52 Cal.Rptr.3d 86, 147 P.3d. 1014, 1024 (2006). In response to Burton’s arguments, the court did not solely determine counsel Slick’s impression of Burton’s purpose in invoking Faretta; it also directly determined Burton’s actual purpose.
The California Supreme Court addressed both Slick’s impression and Burton’s actual purpose in three key paragraphs. The court first recognized that “the referee found [that] Burton invoked and continued to invoke Faretta solely in order to delay the trial.” Id. 52 Cal. Rptr.3d 86, 147 P.3d at 1026. It then discussed Slick’s' testimony regarding his belief' that Burton’s purpose was delay:
According to Slick, Burton consistently said on multiple occasions that he was not ready to go to trial, but never offered Slick a reason for a delay. In Slick’s experience, it is not unusual for defendants to prefer to delay trial and to give the appearance of being able to “wait it out,” and he believed that Burton, who was facing a capital trial, was such a defendant. Burton thus errs in contending that “the only reasonable inference to be drawn” from his Faretta motions is that he “wanted to defend against the state’s case.”
Id. Thus, the first sentence of this paragraph indicates that the referee found Burton invoked Faretta solely in order to delay trial, while the remaining sentences address Slick’s impression. .
In the second paragraph, the California Supreme Court discusses other evidence *1166 that “corroborates” Slick’s assessment that Burton’s purpose was delay:
Slick’s assessment of Burton’s motivation was corroborated by other evidence at the hearing. Kleinbauer testified that Burton had told her he was not ready to go to trial and that he was dissatisfied with Slick because '“the trial seemed to be'... rushing forward.” As a result, Kleinbauer had consulted with another lawyer, Jeffrey Brodey, who had recommended that Burton invoke his right to self-representation if he was not ready for trial and that he not settle for cocounsel status. Tellingly, Klein-bauer’s notes of , this conversation nowhere mention Burton’s alleged desire to present a defense but say instead “tell Ron he’s not ready for trial. July 25 too soon—next year some time.” Klein-bauer further stated in a 1993 declaration that she had instructed Burton to tell Slick “that he was not ready for trial, and that the trial should take place next year some time, after all the investigation was done.” Kleinbauer herself also felt the case “went to trial maybe sooner than it should have.”
Id. Of particular note, I can think of no better example of “a tactic to secure delay” than an attorneys recommendation that a criminal defendant in a capital murder case “invoke his right to self-representation if he’ was not ready for trial and that he not séttle for cocounsel status.” While this paragraph may go no further than determining that Slick’s assessment «of Burton’s purpose was corroborated, it does so by pointing to evidence suggesting that Slick’s assessment was correct, ie., that Burton’s actual purpose was delay.
. Even if these first two paragraphs address Slick’s impression of Burton’s purpose, the third paragraph very clearly adopts factual findings about Burton’s actual purpose:
Burton’s conduct and statements further confirmed his interest in delay. Burton engaged in “game playing” with Dr. Michael Maloney, who had been retained by Slick to conduct a psychological evaluation of Burton. This lack of cooperation is fully consistent with a' defendant who was interested in delay for delay’s sake—a conclusion additionally supported by Burton’s observation in his declaration in support oí his motion for new trial that “[i]n my experience in the Los Angeles County Jail, persons with death penalty cases all tended to have their cases continued for longer periods of time.” Finally, we note that even the trial court seemed aware of Burton’s motivation, advising him during the second Faretta motion hearing “that the trial is going to go ahead. [¶] I know you don’t like the idea, but that’s the idea.” We therefore accept the referee’s finding that Burton’s Faretta motions reflected a dissatisfaction with Slick’s failure to delay the trial, not a dissatisfaction with Slick’s trial strategy.
Id. (alteration in original).
In sum, the California Supreme Court first recognized that “the referee found [that] Burton invoked and continued to invoke Faretta solely in order to delay the trial.” Id. After discussing Slick’s impression of Burton’s purpose, the state supreme court moved beyond Slick’s impression to the. actual purpose, and it determined that “Burton’s conduct and statements further confirmed his interest in delay.” Id. As support for that determination, it reasoned that the “conclusion” that Burton was “a defendant who was interested in delay for delay’s sake” was “supported by Burton’s observation in his declaration in support of his motion for new,trial” and was “fully consistent with” .Burton’s engaging in “game playing” with a psychologist hired by Slick to evaluate Burton. Id. Ultimately, the Cali *1167 fornia Supreme Court “accepted] the referee’s finding that Burton’s Faretta motions reflected, a dissatisfaction with Slick’s failure- to delay -the trial; not a dissatisfaction with Slick’s trial strategy.” Id.
The referee’s factual findings, as accepted by the state supreme court, squarely address the merits of Burton’s purpose in invoking Faretta, and they deserve deference. If we take the California Supreme Court at face value, we are left with .the clear determination that; Burton’s purpose in making his motion was to delay trial.
2
The majority simply ignores the California Supreme Courts accepted factual findings. Nowhere does it acknowledge the California Supreme Court’s recognition that “the referee found [that] Burton invoked and continued to invoke Faretta solely in order to delay the trial.” Id. Nor does it ever grapple with the finding that “.Burton’s conduct and statements further confirmed his interest in delay.” Id.
To the extent that- it does engage with the actual language of the California' Supreme Court opinion, the majority regret-’ tably misconstrues it. For example, the majority argues that the state, court’s statements about' Burton’s “game playing” and his observation about the typical length of continuances for death pénalty cases “must be read in context.” Maj. Op. at 1150. Those statements were made in a paragraph that begins with “Burton’s conduct and statements further confirmed his interest in delay” and concludes with “We therefore accept the referee’s finding that Burton’s Faretta motions reflected a dissatisfaction with Slick’s failure to delay the trial, not a dissatisfaction with Slick’s trial strategy.” Burton, 52 Cal.Rptr.3d 86, 147 P.3d at 1026. In context, the state supreme court was clearly identifying evidence that supported these two propositions, which are directly concerned with Burton’s actual purpose.
' Despite its exhortation, the inajority prefers to read the statements completely out of context. The majority claims that thé state court “was identifying evidence that ‘corroborated’ ‘Slick’s assessment of Burton’s motivation,’ which arguably refuted Burton’s argument that ‘the only reasonable inference to be draw from his Faretta motions [wa]s that he wanted to defend against the state’s case.’ ” Maj. Op. at 1150-51. Yet these propositions—that “Slick’s assessment of Burton’s motivation was corroborated” and that Burton erred “in contending that ‘the only reasonable inference .to be draw’ from his Faretta motions, [was] that he ‘wanted to defend against the state’s case’ ”—were contained, in completely separate paragraphs from the statements about Burton’s “game playing” -and his observation about the typical length -of continuances. See Burton, 52 Cal.Rptr.3d 86, 147 P.3d at 1026. When making the statements about “game playing” and Burton’s observation, the California Supreme Court had clearly moved from discussing Slick’s -impression to discussing Burton’s actual purpose.
The majority also ignores another important contextual clue that the California Supreme, Court did directly address Burton’s purpose: the issue of .his actual purpose was a disputed factual question raised by the Frierson claim before the California Supreme Court appointed the. referee. Specifically, Burton first placed his actual purpose at issue when he claimed in his state habeas: petition that .he .“had sought on four occasions during the .trial to discharge his attorney and -represent himself because of Attorney Slick’s deficiencies.” Id. 52 Cal.Rptr.3d 86, 147 P.3d at 1017. The State-responded that “the true reason Burton had asked- the trial court four times to be allowed to represent himself *1168 ‘was to obtain a continuance to avoid going to trial, not because he wanted further investigation conducted,’ ” id. 52 Cal. Rptr.3d 86, 147 P.3d at 1017-18, which Burton denied in reply, id. 52 Cal.Rptr.3d 86, 147 P.3d at 1018. This factual dispute existed before the reference hearing, so it is not surprising that the referee and the California Supreme Court wound up addressing Burton’s true purpose in seeking to represent himself.
Thus, the majority’s attempt to explain away the California Supreme Court’s findings concerning Burton’s purpose—-not merely Slick’s impression of such purpose—by arguing they must be read “in context,” falls flat.' It iá clear that the California Supreme Court determined Burton’s purpose in invoking Fafettd, and that purpose was delay for delay’s sake.
B
And the California courts indeed afforded Burton a full, fair, and adequate hearing in determining his purpose in seeking self-representation.
1
Recall that Burton’s motivation for invoking Faretta was a contested factual issue before the reference hearing, and Burton submitted' evidence regarding that issue. In addition, Burton was aware that the California Supreme Court asked the referee to determine a closely related question: whéther Slick had reason to believe that Burton invoked Faretta in order to delay trial. Of course, if Burton’s actual purpose was delay, then that fact makes it touch more probable that Slick had reason to believe that Burton’s purpose was delay. Thus, it should have been no surprise when the California courts found a subsidiary fact—that Burton’s actual purpose was delay—as support.for another finding of fact—that Slick had reason to believe Burton’s actual purpose was delay. Burton was not deprived of a full, fair, and adequate hearing merely because the California Supreme Court declined to specify every question that might possibly be answered in the reference hearing.
2
-None of the majority’s reasons are persuasive.
First, the state courts did not deprive Burton of a full, fair, and adequate hearing by misallocating the burden of proof. We have never held that the burden of proof in a Fritz inquiry is on the state or that the state must show that the evidence is not “consistent” with any other purpose than delay. Nor have we held that a misplaced burden “is reason alone not to apply the presumption of correctness” and that it would be “manifestly unfair” to bind Burton to an adverse factual determination made in proceedings in which he bore the burden of proof. Maj. Op. at 1153-54.
Moreover, with respect to Burton’s purpose in seeking to represent himself, there is no indication that the burden of proof played any role in the state habeas proceedings or that the State received the benefit of the .doubt. In those proceedings, Powhere did the referee or the California Supreme Court say that Burton failed to carry his burden with respect to his Faretta motions. The state courts did not deprive- Burton of a full, fair, and adequate hearing on his motivation for invoking Faretta by weighing the evidence and deciding against him.
3
Nor did the state courts deprive Burton of a full, fair, and adequate hearing by failing to apply the proper legal test or to consider key parts of the record. Ultimately, these asserted errors are not errors at all. In Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam), a California appellate court up *1169 held the trial court’s giving a charge to a deadlocked jury under a state-law rule that differed from the federal rule. Id. at 6-7,123 S.Ct. 362. We had concluded that the California appellate court erred in failing to apply a totality of the circumstances test and to consider key pieces of evidence:
[T]he Ninth Circuit charged that the Court of Appeal “failed to apply the totality of the circumstances test as required by Lowenfield.” That was so, the Ninth Circuit concluded, because it “simply mentioned three particular incidents in its analysis,” “failed to consider” other “critical facts,” and “failed to consider the cumulative impact” of all the significant facts, one of which it “[did] not even mention in its analysis.”
Id. at 8-9, 123 S.Ct. 362 (internal alterations and citation omitted). The Supreme Court noted that the state court had focused on three particular incidents, but set forth many facts and circumstances beyond those three incidents. Id. at 9, 123 S.Ct. 362. The Court rejected our conclusion that the state court failed to apply the totality of the circumstances test by not considering certain facts:
The contention that the California court “failed to consider” facts and circumstances that it had taken the trouble to recite strains credulity. The Ninth Circuit may be of the view that the Court of Appeal did not give certain facts and circumstances adequate weight (and hence adequate discussion); but to say that it did not consider them is an exaggeration. There is, moreover, nothing to support the Ninth Circuit’s claim that the Court of Appeal did not consider the “cumulative impact” of all the recorded events. Compliance with Lowenfield ... does not demand a formulary statement that the trial court’s actions and inactions were noncoercive “individually and cumulatively.” It suffices that that was the fair import of the Court of Appeal’s opinion.
Id.[5]
Here, the majority asserts that the California Supreme Court failed to apply a “totality of the circumstances” test. Maj. Op. at 1154. Like in Early, the state court’s lack of a formulary' statement that it was applying the Fritz factors does not render the determination of facts improper if the fair import of the state court’s decision is that it did consider the relevant factors. Moreover, the majority asserts that the California Supreme Court failed to consider various pieces of evidence that it expressly recited. Maj. Op. at 1157-58. Similar to Early, the state court’s recitation of the facts shows that it did consider them.
Therefore, the state-court hearing was full, fair, and adequate, and the presumption of correctness should apply.[6]
*1170 III
For the foregoing reasons, I respectfully dissent.

. Frierson established that, “[g]iven the magnitude of the consequences that flowed from , the decision whether or not to present any defense at the guilt/special circumstance phase, ... counsel could [not] properly refuse to honor defendant's clearly expressed desire to present a defense at that stage.” Frierson, 218 Cal.Rptr. 73, 705 P.2d at 403 & n. 4 (relying in part on Faretta).

. The majority concludes that any pro se representation request is timely, regardless of whether the defendant had a purpose of delay, as long as some other (permissible purpose for the defendant’s motion can be found. It claims that Fritz "asks whether the defendant’s actual and sole purpose was to delay.” Maj. Op. at 1152. But Fritz says nothing about the defendant’s "sole” purpose. Instead, Fritz employs several formulations to describe the relevant inquiry: a motion is timely unless it is “a tactic to secure delay,” “unless it was made for the purpose of delay,” or “absent an affirmative showing of purpose to secure delay.” 682 F.2d at 784. Clearly, delay must be a purpose of a Faretta motion to make it untimely, but Fritz does not require delay to be the “sole” purpose.

. Pre-AEDPA 28 U.S.C. § 2254(d) (1994) provided that, in federal habeas proceedings initiated by a state prisoner,
[A] determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
(1) that the merits óf the factual dispute were not resolved in the State court hearing;
(2) that the factfinding procedure employed by thé State court was not adequate to afford a full and fair hearing;
(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding;____
*1165 [T]he burden shall rest upon the applicant to establish by convincing evidence that the factual determination, by the State court was erroneous.

. Although Early is admittedly, a case governed by AEDPA, the Court made no indication that this part of its analysis was impacted in any way by AEDPA’s amendments. Consequently, the principles can be applied to this pre-AEDPA case.

. Given the majority’s conclusion that the state courts did not resolve the factual dispute on the merits and that Burton was denied a full, fair, and adequate state court hearing, the majority should not be affirming but rather vacating and remanding for an evidentiary hearing in the district court. Under pre-AED-PA habeas law:
An evidentiary hearing in federal habeas proceedings is required (1) where the merits of a factual dispute were not resolved in state hearings ... (3) the state’s fact-finding procedure was not adequate to afford a full and fair hearing; ... (5) material -facts were not adequately developed at the state court.hearing, for which there is no cause or prejudice; or (6) for any reason it appears that the state trier of fact did not afford the applicant a full and fair hearing on the facts.
Rhoades v. Henry, 638 F.3d 1027, 1041 n. 13 (9th Cir.2011) (citing Townsend v. Sain, 372 U.S. 293, 312-13, 83 S.Ct. 745, 9 L.Ed.2d 770 *1170 (1963); Keeney v. Tamayo-Reyes, 504 U.S. 1, 8-11, 112 S.Ct. 1715, 118 L.Ed.2d 318, (1992) (modifying Townsend's fifth factor)); see also Ford v. Wainwright, 477 U.S., 399, 410-11, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). The Townsend criteria are the same as the exceptions in §§ 2254(d)(1), (2), (3), (6). Brewer v. Williams, 430 U.S. 387, 395, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Therefore, the majority’s conclusion that the presumption of correctness does not apply because of the exceptions in subsections (1), (2), and (6) also compels the conclusion that an evidentiary hearing is required.
An evidentiary hearing is especially appropriate when the federal district court rejects the state court's key credibility determinations. "[Section] 2254(d) gives federal habe-as courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.” Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). Here, the district court, on the basis of a cold documentary record, rejected the California Supreme Court’s acceptance of the referee’s credibility determinations, which, were- based on live observation of the witnesses’ demean-ors.
The “reexamination of state convictions that the modem writ entails implicates values of finality and comity that are important to federalism and our system of criminal justice.” Gage v. Chappell, 193 F.3d 1159, 1167 (9th Cir.2015) (citing Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 491, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); Kuhlmann v. Wilson, 477 U.S. 436, 453 n. 16, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)). Given these important concerns and the rejection of several key state-court credibility determinations, shouldn’t the district court at least observe live witnesses itself before forcing the state to retry a 32-year-old capital murder case?